Our next case on the docket is 5-23-0646, People v. Johnson. If you are ready to proceed, you may please, when you begin, identify yourself for the  May it please the Court, Counsel, Laura Bailon on behalf of the People. The Post-Conviction Hearing Act contemplates the filing of only one post-conviction petition. It imposes immense procedural default hurdles on successive petitions through the cause-and-prejudice test. In this case, defendants sought to raise a youth-based, as-applied, proportionate penalties claim in a successive petition, so he was required to meet that cause-and-prejudice test. But under the 2023 Illinois Supreme Court case of People v. Moore, defendant did not show cause. In Moore, two petitioners sought leave to raise youth-based, proportionate penalties claims, as-applied claims, in successive petitions. They relied on Miller, and one also cited articles about young adult brain studies. But the Court found that those petitioners had not sufficiently alleged facts to show cause. The Court found that Miller did not change the law applicable to young adults, and so it did not provide cause for bringing a proportionate penalties claim in a successive petition. In this case, the trial court found that Moore was distinguishable because the defendant in this case was sentenced to a mandatory natural life sentence while the petitioners in Moore and Williams received discretionary life sentences. But that distinction is legally irrelevant. It's discussed in Horshaw and Leach and other unpublished opinions cited in the People's Brief. The rationale is that Moore found that these defendants had the essential legal tools to raise the youth-based, as-applied, proportionate penalties claims even prior to Miller, prior to 2012, because Illinois law has long recognized the difference between younger adults and older adults. Moore made clear that Miller and related cases did not change the law regarding proportionate penalties claims by young adult offenders, stating that as Miller does not directly apply to young adults, it also does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause. So that portion of Moore is not distinguishing between discretionary and mandatory. Other portions of Moore mention discretionary life sentence because that's what those sentences were, but that fact, as noted in that excerpt from paragraph 40, is not hinging on mandatory versus discretionary because the life sentences could be challenged in an as-applied, youth-based, proportionate penalties claim before Miller. Regarding the argument that new science provides cause, the recent studies may provide some helpful support to a proportionate penalties claim, but because Illinois law is long recognized as a law of nature, that there's a significant developmental difference between younger adults and older adults, the proportionate penalties claim was buildable prior to Miller and prior to those studies that Miller cited on and relied on. Additionally, the defendant did not show prejudice in this case, and also his proportionate penalties claim was meritless because the seriousness of the offense is an integral part of a proportionate penalties analysis. That analysis asks whether the sentence is so wholly disproportionate to the offense that it shocks the moral sense of the community. Here, the trial judge did not address the facts of the offense when ordering a new sentencing hearing, but looking at the seriousness of the offense, the defendant's mandatory life sentence was not so disproportionate to the offense as to shock the moral sense of the community, even given his brain development having commonality with juveniles. The people are not challenging the judge's factual findings that the brain development had commonalities with juveniles or that there was some rehabilitative potential, but the proportionate penalties clause isn't concerned with rehabilitative potential only. What it needs to be proportionate to, the sentence, is the seriousness of the offense. And here, the offense is incredibly serious. The defendant was an adult principal offender who personally planned and initiated an armed robbery that killed two people, almost killed a third person, but a gun jammed. The defendant obtained a handgun before taking it to the apartment where he planned to commit the armed robbery. He's the one who initiated the armed robbery by going to the bathroom and then bringing out the handgun and saying it's on. He ordered the victims into the bedroom where he shot one of them in the head. He told a co-defendant to get a shotgun from the car and to use it to shoot the two other victims. He took money and drugs from that bedroom, and he told the co-defendant to make sure the third person was dead, but that's when the gun jammed, so that person was only seriously injured by the shotgun blast. Afterwards, he disposed of the guns and then discussed with that co-defendant, possibly killing a second co-defendant and his girlfriend because they thought they might talk. So the defendant's sentence did not violate the proportionate penalties clause, given the serious nature of the offense, his personal involvement in it, and his status as an adult principal offender. The rehabilitative potential is not entitled to more weight than the seriousness of the offense. Are there any questions? The defendant was 20 years old when this crime was committed, correct? Correct. So the trial judge in its ruling, in essence, applied Miller factors, even though the Miller kind of set a bright line at 18? Yes. He applied the Miller factors to this defendant? Yes. And there's a specific sentence in the trial judge's order stating that because the defendant was 20 and his brain development had commonalities with juveniles, that's what entitled him to a Miller-compliant sentencing hearing. So they did essentially turn the proportionate penalties claim into expanding Miller past the age of 18, which the Illinois Supreme Court has defined to do. So the people's position is it can't be done through the proportionate. If it's not an Eighth Amendment claim, it's not an Eighth Amendment claim, and the proportionate penalties analysis isn't met. No other questions. Thank you. The people have asked that this Court reverse the trial court's order remanding for a resentencing hearing and dismiss or alternatively deny the successive folksman leadership petition. All right. Thank you, counsel. Thank you, Your Honors. Appellee, please identify yourself for the record, and you may proceed. Your Honors, I'm Assistant Defender Levi Harris, and I'm here this morning on behalf of the appellee, James Johnson. We're here this morning asking the Court to affirm the judgment of the Circuit Court of St. Clair County, which granted my client, James, a successive post-conviction petition after a third-stage evidentiary hearing, two-year process, and ordered a new sentencing hearing for him. Within that single judgment, the Circuit Court made two separate decisions, one, that he had satisfied the cause and prejudice test, made a prima facie showing to be allowed to file his petition, and two, that his mandatory life sentence violated the proportionate penalties clause as applied to him because the evidence showed that he was more like a juvenile than an adult at the time he was sentenced and that none of these things could be considered because of the mandatory nature of his sentence. Both of those decisions were correct, and because of that, this Court should affirm the judgment, bearing in mind, as of course the Court is aware that you may affirm on any basis in the record, you don't have to affirm for the same reasons that the Circuit Court reached its judgment. Before I touch off, I want to just briefly disagree politely with something Counsel said in response to Justice Fon's question, which was that he asked, did the Circuit Court apply the Miller factors to this defendant? I don't believe that's quite what she did. What she said was because of the particular circumstances, this is an as-applied challenge, hearing that went on for three court dates, expert testimony, et cetera, because of that, he was more like a juvenile than an adult at the time of the offense. Therefore, a sentencing court should be allowed to look at some of these factors. And so the judgment is not that my client gets out of prison or that my client can't have a sentence of more than X, Y, or Z. The judgment is simply that he should go back to the sentencing court and have a new sentencing hearing at which some of these factors about his life can be considered. So none of that analysis was done by Judge Katz in this proceeding. So let's talk about the two decisions that underlie the judgment. First of all, the decision to grant leave to file in the first instance of the successive petition. As for cause, the petition, James's petition, cited two things, new law that had come into effect since the time that he filed his first petition in 1998 and new science that had come to light, as science does, I guess, from time to time, in the years since he had filed his first petition. I think it was only a matter of days, like five days, the court granted this leave to file after the motion was filed. And at the time, I think everybody was in agreement that that was the correct decision. Cases had come back from this court where leave to file had been denied. They had been sent back to St. Clair County and said, look, they've cited Miller as a reason for cause. Let's go ahead and docket this for second stage proceedings. Tellingly, the state in St. Clair County didn't challenge cause and prejudice at all throughout the entire proceedings, even after the Moore case came out. The state did cite the Moore case, which came out between the second and the third hearing dates in the third stage evidentiary hearing. But the state only said, well, because of Moore, you know, Moore is another instance where a petitioner was denied a resentencing. Did not say because of Moore, we should go back and eviscerate the cause finding in this case. So I think that that shows that at the time that Judge Katz made that decision, everybody understood that somebody who cited the new law and the new brain science, that was enough for cause and prejudice. What we know from Moore is that the Supreme Court, the Illinois Supreme Court, has said you can't rely on the new law. The law was always there. If you had the essential legal tools to make your proportionate penalties claim, then that can't be cited for cause. That can't be your cause. And Judge Katz distinguished that in two ways. She said, first of all, the petitioners in Moore had discretionary sentences. The sentence here was mandatory. Second of all, James Johnson cited voluminous amounts of brain science in this case that were not present and were importantly not discussed in the holding in Moore. The state mentions that, well, you know, in the facts section, I think Petitioner Williams, there were two petitioners in the Moore case, one of them had, you know, included some articles about brain science. None of that was in the holding in Moore. The holding in Moore was that because Miller does not apply directly to young adults, Miller does not give those young adults cause to file the successive petition. And so, you know, that is the narrow holding. So that distinguishes our case from this case. Another thing that distinguishes this case from the Moore case, and from pretty much every other case that the state and I have both cited, all those cases were either cases where leave to file was denied in the first instance or where a circuit court denied the postconviction petition at some other stage in the third stage, or excuse me, in the three-stage process. Here, that didn't happen. We didn't have a denial, and we're here asking the court to overturn that. We had an entire three-stage postconviction process that went on for two years, went on for two years during the pandemic. There were multiple petitioners who were part of this in different parts of the hearing. There was an expert. There was testimony from my client's mother. And so we have not only the prima facie facts that we have, but because of the posture of this case, we have tons of evidence in this case concerning the new brain science that came out to show generally what people who are 20 years old are like and that they tend to mature later than what we knew. Specifically as to my client, we've learned very recently that these so-called adverse childhood experiences delay people's brain development and their psychological and personality development even later than their age cohorts. So we already know that if a switch doesn't flip at 18, that you are all of a sudden a mature adult, that it's a gradient. What we've also learned very recently and applies to my client is that when you have all these things like your mom being beaten up in your home, being physically abused, being sexually abused in your home, having family members in your home that end up going to prison and being taken away from your house, food scarcity in your house, you know, my client had to deliver the screen letter, there were so many kids there she had to put a chain around the refrigerator so they wouldn't eat the food that had to be rationed out. All of those things not only make us feel bad for a petitioner, and they would have made us feel bad for a petitioner in 1998, but they delay the development of the brain. Somehow, chemically, I don't understand it, I didn't pick that route in school, obviously neither did your honors, that's why we're here. But it delays the development so that we're not just talking about a delayed culpability of a petitioner because we had a rough upbringing, we're also talking about a greater potential for rehabilitation and a greater potential that he's not going to be a danger to the community. So those are different penological interests that we know from these ACEs are being satisfied with these younger clients. Briefly, this means two minutes, right? It's been a while since I've had this buzzer. I want to talk briefly about this third stage constitutional violation. The state says that Judge Katz did not consider the circumstances of the offenses at all. But we have to presume that the court did do that. The court was well aware of the facts in this case. We have to presume, absent something affirmative in the record, that the court followed the law. The court heard the testimony and the evidence about my client's life and upbringing, and based on that, based on everything else in the record, which would include the seriousness of the offense, on balance she found that the sentence violated the proportionate penalties clause unless the court had some discretion to consider these other factors. That's a good old-fashioned balancing test that circuit courts are entrusted with all the time that we review for manifest error. Any of your honors who may have been sitting in judgment of the circuit court might have reached a different decision, but that doesn't mean that the decision that was reached here was wrong on the basis of the record or was manifest error. I think that's about everything that I have to say, believe it or not. Well, starting with the standard of review, the people acknowledge that manifest evidence is the standard for credibility determinations, factual determinations. However, as noted in People v. Charleston, the issue of whether a sentence violates the proportionate penalties clause of the Illinois Constitution as applied is reviewed de novo. So it's kind of a hybrid standard, but people aren't challenging the facts, so people believe the de novo standard applies. Concerning the people's earlier argument in the claim about what the trial court stated, I've located the quote from the trial court, which was that when a court is foreclosed from taking into consideration the youthful characteristics of an emerging adult and the potential for rehabilitation, the proportionate penalties clause is violated. So that's the statement that the people were basing their argument on. And to clarify, the people aren't saying that the judge applied those factors and lowered the sentence. That clearly didn't happen. But the judge found that a Miller-compliant hearing was necessary based the people's position is only on the youthful characteristics of an emerging adult without consideration of the seriousness of the offense. Additionally, the people in the third-stage argument, which was the first time that people addressed the court after Moore came out, stated that the Illinois Supreme Court in Moore held that Miller does not give cause for a young adult to file a successive petition. Under Bailey, once the trial judge allows a successive petition to be filed, the people can't have any input at that stage but can later ask that it be dismissed. And so the people did cite Moore at the first opportunity and note that it didn't provide cause for young adult offenders to file successive petitions. Additionally, the holding in Moore did encompass the brain studies. Well, first, Miller integrated the brain science into its decision, discussing it extensively and relying on it. And additionally, Moore stated that defendants, quote, did not sufficiently allege facts that make a prima facie case showing cause for raising the sentencing challenges in successive post-conviction petitions. So if they didn't sufficiently allege facts, that means that the court views the facts that they allege as important, and the facts that the court stated were alleged included the articles on young adult brain studies. Additionally, even if setting aside the cause and prejudice argument, the proportionate penalties clause was still not violated in light of the serious nature of the offense. The only case that the people are aware of that has ever overturned a mandatory natural life sentence is the Leon Miller case, which concerned a 15-year-old who had one minute to contemplate whether to get involved in an offense and was not personally involved. He only served as a lookout and never personally handled a gun. And in that case, the court found for the 15-year-old who was not a principal offender that the sentence violated the proportionate penalties clause as applied. But this case, the facts are wildly different where we have a 20-year-old adult principal offender who was involved in planning, committing, and attempting to cover up the crime that killed two people and seriously injured a third. No other questions. Thank you. Thank you, Your Honors. Thank you very much for your arguments, counsel. We will take this matter under advisement and issue a ruling in due course.